**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JASON GATLIN**,<br><br>Plaintiff,<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE, *et al.***,<br><br>Defendant. | Case No. 24-cv-1439 (CRC) |

**MEMORANDUM OPINION**

In May 2023, Plaintiff Jason Gatlin requested records from the Department of Justice's Federal Bureau of Investigation (FBI) and Executive Office for United States Attorneys (EOUSA) under the Freedom of Information Act (FOIA). In February 2024, Gatlin filed this action *pro se* alleging that Defendants failed "to timely respond" to his "request for expedited processing." Compl. at 2, ECF No. 1. By 2025, Defendants had identified thousands of potentially responsive pages, some of which were released to Gatlin along with estimates of processing and duplication fees. Having received no payment from Gatlin nor any agreement to pay fees, Defendants have suspended their processing of records and moved for summary judgment. See Defs.' Mot. for Summ. J. ("MSJ") at 1–2, ECF No. 28-2. Gatlin has not refuted Defendants' facts, and payment of assessed fees is a prerequisite to obtaining judicial review under FOIA. Therefore, the Court will grant Defendants' motion.

## I. Background

Mr. Gatlin's FOIA requests stem from his criminal prosecution and subsequent conviction in the Southern District of Florida for sex trafficking of a minor, production of child pornography, and witness tampering. See United States v. Gatlin, 90 F.4th 1050, 1056, 1075

(11th Cir. 2024) (vacating witness tampering conviction); Compl. at 2 (acknowledging conviction).

A. FBI Records

In a May 2023 FOIA request, Gatlin sought "any and all" records pertaining to the FBI criminal investigations that led to his conviction. FBI Decl. Exs. ("FBI Decl."), Ex. A, at 2–3, ECF No. 28-4. Two weeks later, the FBI mailed Gatlin an acknowledgment letter informing him that "as a general requester," he "would be charged applicable search and duplication fees" pursuant to the statute. Decl. of Amie Marie Napier ("Napier Decl.") ¶ 7, ECF No. 28-3; see 5 U.S.C. § 552(a)(4)(A) (governing fee requirements and limitations).

In February 2024, Gatlin filed this suit. Compl. at 3. Thereafter, in April 2024, the FBI informed Gatlin that it located "approximately 7,839 pages of records" that were "potentially responsive" to his request. FBI Decl., Ex. D, at 14. It estimated the total costs for processing the request to be "$2,485.00 for CD release(s) or $2,636.95 for paper/media release(s)." Id. Because releases to Gatlin at his correctional institution would be "made in paper," the estimated duplication fee was $389.95 if all pages were determined responsive. Id. A "Requester Response" form setting out options was included for Gatlin to complete and return within 30 days; otherwise, it cautioned, the request would be closed. Id. at 15. The letter explained how Gatlin could "accelerate the process" and possibly "reduce search and duplication costs" by narrowing the scope of the request. Id. In September 2024, Gatlin replied: "there will be no narrowing of [the] search request." Id., Ex. E, at 20.

In February 2025, the FBI reiterated the record and fee information to Gatlin and added details about its "multi-queue processing." Id., Ex. F, at 22. With more than 5,000 pages slated for review, Gatlin's request was placed in the "extra-large queue" with a median processing time

of 79 months. Id. As before, Gatlin was informed of "the opportunity to reduce the scope of [his] request," which would "accelerate the process and could potentially place [his] request in a smaller processing queue." Id. The accompanying "Requester Response" form warned: "If we do not receive your duplication format decision/and or estimated duplication fee selection within thirty (30) days of the date of this notification, your case will be closed after the processing of your 100 free pages." Id. at 23–24. In March 2025, the FBI made an interim release to Gatlin consisting of those 100 free pages. See id., Ex. G, at 28–29. Still, Gatlin had not agreed to pay the estimated duplication costs necessary for further releases. See Defs.' Statement of Undisputed Material Facts ("SUMF") ¶ 5, ECF No. 28-1.

B. EOUSA Records

Similarly, in a May 2023 FOIA request to EOUSA, Gatlin sought "all files listed under" his criminal case in the Miami Division of the U.S. Attorney's Office for the Southern District of Florida. EOUSA Decl. Exs. ("EOUSA Decl."), Attach. A, at 2, ECF No. 28-6. A few weeks later, EOUSA acknowledged the request and informed Gatlin that he "may be required to pay certain costs associated with processing [the] request, including, searching for, reviewing, and duplicating requested records." Id., Attach. B, at 4. A form was included for Gatlin to choose whether to narrow the request; he could obtain for free the first 100 pages and two hours of search time to which he was entitled, specify a maximum amount he was willing to pay for duplication and search time, or withdraw the request. Id. at 6. Gatlin replied agreeing to pay up to $75.00. Id., Attach. C, at 8. In November 2023, Gatlin wrote to express his "intent to sue" if EOUSA failed to comply with FOIA's timeline for processing the request. Id., Attach. H, at 24.

In February 2025, during the course of this litigation, EOUSA made its "first interim release" of "100 complimentary pages." Decl. of Tricia Francis Jones ("Jones Decl.") ¶ 17, ECF

No. 28-5; see EOUSA Decl., Attach. F, at 18. Two weeks later, EOUSA informed Gatlin that the U.S. Attorney's Office located "approximately 8,500 pages of records" that were "potentially responsive" to his request. Id., Attach. G, at 20. It estimated duplication costs to be $420.00. Id. Because under DOJ's FOIA regulations "an advance payment up to the amount of" the estimated fee could be required before processing began, the letter included a form for Gatlin to choose how he wished to proceed, if at all. Id. at 20–22 (citing 28 C.F.R. 16.10(i)(2)). In December 2025, EOUSA informed Gatlin that it was releasing "an additional 500 pages of records" beyond the 100 free pages provided in February and would "process" the remaining records "if [he] agree[d] to pay a duplication fee for them." Id., Attach. I, at 26. Gatlin has neither agreed to pay a duplication fee nor requested a fee waiver. See Jones Decl. ¶¶ 22–25. As a result, "EOUSA has ceased processing Plaintiff's FOIA request." Defs.' SUMF ¶ 9.

## II. Legal Standard

FOIA requires a federal agency to release all records responsive to a properly submitted request except those protected from disclosure by one or more of nine enumerated exemptions. See 5 U.S.C. § 552(b). The agency's disclosure obligations are triggered by its receipt of a request that "reasonably describes [the requested] records" and "is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). "Summary judgment is the typical mechanism to determine whether an agency has met its FOIA obligations." Assassination Archives & Rsch. Ctr. v. CIA, 657 F. Supp. 3d 95, 99 (D.D.C. 2023) (Cooper, J.) (citation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In a FOIA case, a district court reviews the agency's decisions *de novo* to determine whether the government has improperly withheld agency records. See Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136, 150 (1980). The "burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). "Summary judgment may be granted on the basis of agency affidavits" when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements" and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." Judicial Watch, Inc. v. U.S. Secret Serv., 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks and citation omitted). A FOIA requester's failure to pay required processing fees constitutes a failure to exhaust administrative remedies and warrants summary judgment for the agency as to the records for which fees remain unpaid. See Matthews v. FBI, 575 F. Supp. 3d 166, 183–84 (D.D.C. 2021).

**III. Analysis**

Defendants argue that they are entitled to summary judgment because Gatlin has failed to pay assessed duplication fees required by FOIA. MSJ at 7–9. That failure, they contend, "relieves the FBI and EOUSA from further searches and processing on Plaintiff's request." Id. at 8. The Court agrees.

For general requesters like Gatlin, FOIA authorizes the setting of "reasonable standard charges for document search and duplication." 5 U.S.C. § 552(a)(4)(A). The "payment or waiver of assessed fees or an administrative appeal from the denial of a fee waiver request is a prerequisite to filing a FOIA lawsuit in the district court." Antonelli v. ATF, 555 F. Supp. 2d 16, 23 (D.D.C. 2008) (collecting cases). Gatlin, however, does not dispute his nonpayment of fees about which he was advised on multiple occasions. See supra at 2–4. Nor does he claim that he

requested and was denied a fee waiver. See 5 U.S.C. § 552(a)(4)(A)(iii) (providing for fee waivers or reduced fees "if disclosure . . . is in the public interest . . . and is not primarily in the commercial interest of the requester."); 28 C.F.R. § 16.10(k)(1) (allowing a requester to "seek a waiver of fees by submitting a written application" making certain showings).

Rather, Gatlin contends that Defendants (1) provided "an estimation," not a "mandate" for him "to make payment" and (2) "waived their rights to exercise the demandment of payment under FOIA when they failed to . . . respond in the required 6 months." Pl.'s Opp. at 1–2, ECF No. 31. Neither claim raises a material dispute of fact. To the extent Gatlin invokes FOIA's constructive exhaustion provision triggered by an agency's failure to meet certain deadlines, see 5 U.S.C. § 552(a)(6)(C)(i), he misunderstands the question at hand. A "requester's failure to pay assessed fees also constitutes a failure to exhaust," Marcusse v. U.S. Dept. of Justice Office of Information Policy, 959 F. Supp. 2d 130, 141 (D.D.C. 2013), aff'd, No. 14-5099, 2015 WL 1606930 (D.C. Cir. Mar. 24, 2015) (per curiam), and filing a lawsuit does not relieve the requester of his "statutory obligation to pay any and all fees which the agency was authorized to collect," Pollack v. DOJ, 49 F.3d 115, 119 (4th Cir. 1995); see also Matthews, 575 F. Supp. 3d at 183–84; Otero v. DOJ, 292 F. Supp. 3d 245, 253 (D.D.C. 2018) (granting summary judgment to DOJ based on the FBI's refusal "to perform any additional work on" the FOIA request of a plaintiff who failed to pay fees timely), aff'd, No. 18-5080, 2019 WL 4565497 (D.C. Cir. Sept. 4, 2019); Rosenberg v. ICE, 954 F. Supp. 2d 1, 10 (D.D.C. 2013) (collecting cases). Defendants' decision to suspend the processing of records for nonpayment of fees was thus not an improper withholding under FOIA. See Matthews, 575 F. Supp. 3d at 184; 28 C.F.R. § 16.10(e)(2) (requiring DOJ components to stop processing requests "until the requester commits in writing to pay the actual or estimated total fee").

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' [28] Motion for Summary Judgment. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: November 17, 2026